1  **BLUMENTHAL NORDREHAUG BHOWMIK**
   **DE BLOUW LLP**
2    Norman B. Blumenthal (State Bar #068687)
     Kyle R. Nordrehaug (State Bar #205975)
3    Aparajit Bhowmik (State Bar #248066)
   2255 Calle Clara
4  La Jolla, CA 92037
   Telephone: (858) 551-1223
5  Facsimile: (858) 551-1232

6  Attorneys for Plaintiffs

7

8

9

10

11                 **UNITED STATES DISTRICT COURT**

12                 **CENTRAL DISTRICT OF CALIFORNIA**

13

14  LINDA SHAHBAZIAN and EDWIN          CASE No. **2:18-cv-03076-ODW-KS**
    MENDOZA, individuals, on behalf of
15  themselves, and on behalf of all persons
    similarly situated,                 **MEMORANDUM OF POINTS**
16                                       **AND AUTHORITIES IN**
                                         **SUPPORT OF MOTION FOR**
17             Plaintiffs,               **FINAL APPROVAL OF CLASS**
                                         **SETTLEMENT**
18  vs.

19  FAST AUTO LOANS, INC., a California  Hearing Date: October 21, 2019
    Corporation; and Does 1 through 50,  Hearing Time: 1:30 p.m.
20  Inclusive,
                                         Judge: Hon. Otis D. Wright II
21             Defendant.                Courtroom 5D, Fifth Floor

22                                       First Street Courthouse,
                                         350 W. 1st Street
23                                       Los Angeles, CA 90012

24

25

26

27

28

# **TABLE OF CONTENTS**

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     SUMMARY OF THE LITIGATION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    THE SETTLEMENT BEFORE THE COURT . . . . . . . . . . . . . . . . . . . . . . 6

IV.     THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS
        COURT TO GRANT FINAL APPROVAL . . . . . . . . . . . . . . . . . . . . . . . . . 10

V.      THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE . . . . . . 13

        A.    The Test For Fairness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        B.    The Settlement Satisfies the Test For Fairness . . . . . . . . . . . . . . . . . . 14

              1.    The Investigation and Discovery are Sufficient to Allow
                    Counsel and the Court to Act Intelligently . . . . . . . . . . . . . . . 14

              2.    The Settlement Was Reached Through Arm's Length
                    Bargaining . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

              3.    Counsel is Experienced in Similar Litigation . . . . . . . . . . . . . . 17

              4.    There are No Objections to the Settlement and
                    No Opt-Outs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

              5.    The  Risk, Expense, Complexity, and Likely Duration of
                    Further Litigation  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

VI.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## <u>TABLE OF AUTHORITIES</u>

**Cases:**                                                        **Page(s):**

*Aceves v. Autozone Inc.*,
    Case No. 5:14-cv-2032, ECF No. 58 (C.D. Cal. 2016) . . . . . . . . . . . . . . . . . . 9

*Armstrong v. Board of School Directors*,
    616 F.2d 305, 325 (7th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Bailes v. Lineage Logistics, LLC*,
    2016 U.S. Dist. LEXIS 110943 (D. Kan 2016) . . . . . . . . . . . . . . . . . . . . . . . 9

*Brinker v. Superior Court*,
    53 Cal. 4th 1004 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Coleman v. Kohl's Dep't Stores, Inc.*,
    2015 U.S. Dist. LEXIS 135746 (N.D. Cal. 2015) . . . . . . . . . . . . . . . . . . . . . . 19

*Cotton v. Hinton*,
    559 F.2d 1326, 1331 (5th Cir.1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*,
    213 F.3d 454 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

*Feist v. Petco Animal Supplies, Inc.*,
    2018 U.S. Dist. LEXIS 98686 (S.D. Cal. 2018) . . . . . . . . . . . . . . . . . . . . . . . 9

*Fisher Bros. v. Cambridge-Lee Indus., Inc.*,
    630 F. Supp. 482, 489 (E.D. Pa. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Glass v. UBS Fin. Servs.*,
    2007 U.S. Dist. LEXIS 8476 (N.D.Cal. Jan. 27  2007) . . . . . . . . . . . . . . . 8, 15

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011, 1026 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Austrian & German Bank Holocaust Litigation*
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Dept. Of Energy Stripper Well Exemption Litig.*,
    653 F.Supp. 108, 115 (D.Kan.1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Heritage Bond Litig.*,
    2005 U.S. Dist. Lexis 13555 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 12

*Kirkorian v. Borelli*,
    695 F. Supp. 446, 451 (N.D. Cal. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Klingensmith v. Max & Erma's Restaurants, Inc.*,
    2007 U.S. Dist. LEXIS 81029, 2007 WL 3118505 (E.D.Pa. 2007) . . . . . . . . 19

*Landrum v. Acadian Ambulance Serv., Inc.*,
    Case No. 14-cv-1467, ECF No. 37 (S.D. Tex. 2015) . . . . . . . . . . . . . . . . . . . 9

*Laskey v. Int'l Union*,
    638 F.2d 954 (6th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Luna v. Hansen & Adkins Auto Transp., Inc.*,
    2018 U.S. Dist. LEXIS 100055 (C.D. Cal. 2018) . . . . . . . . . . . . . . . . . . . . 19

*Lyons v. Marrud, Inc.*,
    1972 U.S. Dist. LEXIS 13401 (S.D.N.Y. 1972) . . . . . . . . . . . . . . . . . . . . . . 14

*Moore v. Aerotek, Inc.*,
    Case No. 2:15-cv-2701, 2017 WL 2838148 (S.D. Ohio June 30, 2017) . . . . . 9

*Officers for Justice v. Civil Service Com'n, etc.*,
    688 F.2d 615 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13

*Patrick v. Interstate Mgmt. Co., LLC*,
    Case No. 8:15-cv-1252, ECF No. 42 (M.D.Fla. 2016) . . . . . . . . . . . . . . . . . 9

*Pietras v. Sentry Ins. Co.*,
    513 F. Supp. 2d 983 (N.D. Ill. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
    390 U.S. 414, 424-25 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Reed v. General Motors Corp.*,
    703 F.2d 170, 175 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Stoetzner v. U.S. Steel Corp.*,
    897 F.2d 115 (3d. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Stovall-Gusman v. W.W. Granger, Inc.*,
    2015 U.S. Dist. LEXIS 78671 (N.D. Cal. 2015) . . . . . . . . . . . . . . . . . . . . . . 9

*Waits v. Weller*,
    653 F.2d 1288 (9th Cir 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Walker v. McClane/Midwest, Inc.*,
    No. 2:14-cv-04315, ECF No. 29 (W.D. Mo. 2015) . . . . . . . . . . . . . . . . . . 10

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Statutes, Rules and Regulations:**

15 U.S.C. § 1681 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

15 U.S.C. § 1681n . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

California Business & Professions Code § 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

California Labor Code § 201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

California Labor Code § 202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

California Labor Code § 203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7

California Labor Code § 226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

California Labor Code § 226.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

California Labor Code § 510 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

California Labor Code § 512 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

California Labor Code § 2802 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. Rules Civ. Proc., rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Secondary Authorities:**

*Manual for Complex Litigation, Second* §30.44 (1993) . . . . . . . . . . . . . . . . . . . . . . 10

Newberg & Conte, *Newberg on Class Actions*, (3d ed. 1992) §11.41 . . . . . . . . . . . 10

## I.    INTRODUCTION

Plaintiffs Linda Shahbazian and Edwin Mendoza ("Plaintiffs") and Defendant Fast Auto Loans, Inc. ("Defendant") have reached a class settlement.  Under the terms of the Class Action Settlement Agreement ("Agreement"), Defendant agrees to pay One Million One Hundred Thousand Dollars ($1,100,000) ("Gross Settlement Amount") in consideration for the settlement and the release of the Class Members' claims.  This Court preliminarily approved the settlement by Order dated June 20, 2019 [Doc. No. 39].

In accordance with the preliminary approval order, the required notice of the proposed settlement was disseminated to the 1,018 individuals in the Class.  The result is that there are no objections and two (2) opt outs. As a result, nearly the entire Class will be participating in the Settlement and will be sent a payment.  The details of the notice administration process are set forth in a Declaration of Susanna Webb filed with this motion.

The purpose of this Final Approval Hearing is to determine whether the proposed settlement of the litigation should be finally approved and for approval of the award of attorneys' fees and costs to be paid to Class Counsel and the Plaintiffs' service awards. Plaintiffs respectfully submit this Memorandum in support of final approval and the proposed entry of the Order granting final approval and judgment in this class action.[1]

## II.    SUMMARY OF THE LITIGATION

On January 26, 2018, Plaintiffs filed a Complaint against Defendant in the Superior Court of the State of California, County of Los Angeles (Case No. BC691951). Plaintiffs asserted claims against Defendant for: (1) Unfair competition in violation of California Business and Professions Code § 17200 et seq.; (2) Failure to pay overtime

---

[1] Previously filed was the Motion for Award of Attorneys' Fees, Costs and Service Awards. [Doc. No. 40].  A detailed discussion of the background of the case, the major events of the litigation, the settlement negotiations, the terms of the proposed Settlement and its benefit to Class Members is set forth in the Declaration of Norman Blumenthal ("Decl. Blumenthal"), filed herewith.

wages in violation of Cal. Lab. Code §§ 510, et seq.; (3) Failure to provide required meal periods in violation of California Labor Code §§ 226.7 and 512 and the applicable IWC Wage Order; (4) Failure to provide required rest periods in violation of California Labor Code §§ 226.7 and 512 and the applicable IWC Wage Order; (5) Failure to provide accurate itemized wage statements in violation of California Labor Code § 226; (6) Failure to reimburse employees for required expenses in violation of California Labor Code § 2802; (7) Failure to timely provide wages when due in violation of California Labor Code §§ 201, 202, and 203; (8) Violation of the Fair Credit Reporting Act (15 U.S.C. § 1681, et seq., "FCRA") for failure to make proper disclosures; and (9) Violation of FCRA for failure to obtain proper authorization.  (Decl. Blumenthal, ¶ 6(a).)

On April 12, 2018, Defendant removed the Action to federal court.  On April 19, 2018, Defendant filed an Answer to the complaint, which denied Plaintiffs' claims and allegations in their entirety and alleged seventeen affirmative defenses.  On August 13, 2018, Plaintiffs filed a First Amended Complaint adding a PAGA claim.  (Decl. Blumenthal, ¶ 6(b).)

During the course of litigation, the Parties engaged in an exchange of information and documents were produced.  The Parties agreed to continue the Scheduling Conference, and focused on the production of information and documentation for mediation purposes.  The Parties agreed to mediation before a neutral mediator in an attempt to resolve the Action.   (Decl. Blumenthal, ¶ 6(c).)

In the course of litigating the Action, Plaintiffs and Defendant have engaged in substantial investigation in connection with the Action, including the detailed investigation and the exchange of information regarding the number of possible class members, Defendant's payroll information for the Class, and other relevant issues.  Class Counsel has thoroughly analyzed the value of the Class Members' claims during the prosecution of this Action.  This investigation and prosecution has included, among other things, (a) multiple meetings and conferences with Plaintiffs; (b) inspection and analysis of the documents and materials produced by Plaintiffs and Defendant; (c) analysis of the

various legal positions taken and defenses raised by Defendant; (d) investigation and analysis regarding class treatment of the claims; (e) analysis of potential class-wide damages; (f) research of the applicable law with respect to the claims asserted in the Complaint and the potential defenses thereto; (g) the exchange of information through informal discovery; and (h) assembling data for calculating damages, including retaining an expert for this calculation.  The investigations and discussions by counsel have been more than sufficient to give the Plaintiffs and Class Counsel a sound understanding of the merits of their positions and to evaluate the worth of the claims of the Class Members in light of the defenses to them.  Plaintiffs and Class Counsel believe that the settlement with Defendant for the consideration and on the terms set forth in the Agreement is fair, reasonable, and adequate and is in the best interests of the Class in light of all known facts and circumstances, including the risk of significant delay, the likelihood that Defendant would prevail on its defenses, and numerous potential appellate issues. (Decl. Blumenthal, ¶ 6(d).)

Defendant does not admit any liability and denies any wrongdoing and denies that the Class Members are entitled to any damages.  Defendant denies any and all allegations relating to this matter, including, among other things, that it has failed to properly compensate non-exempt employees, failed to properly obtain consent for background checks, or that it otherwise violated its legal obligations.  Defendant has asserted many affirmative defenses, including that the claims were based on individualized facts and were not appropriate for class certification.  Defendant maintains that it has acted lawfully at all times. (Decl. Blumenthal, ¶ 6(e).)

On August 14, 2018, the Parties participated in an all-day mediation presided over by David Rotman, Esq., a respected and experienced mediator of employment and consumer class actions.  During the mediation, each side, represented by its respective counsel, could not agree to settle the Action. Only after these arms-length negotiations with the assistance of the mediator did the Parties agree to settle the Action and all other matters covered by this Agreement pursuant to the terms and conditions of a mediator's

1  proposal and executed a Memorandum of Understanding.  The Parties then negotiated
2  and prepared the Agreement which sets forth the final terms of Settlement for this
3  Court's consideration.  As part of the Settlement, the Parties agreed that for settlement
4  purposes only a Second Amended Complaint would be filed to add claims for alleged
5  off-the-clock work, including any corresponding wages, overtime pay and penalties
6  allegedly owed, and other relief based thereon. The Second Amended Complaint was
7  filed, by stipulation of the Parties, on October 11, 2018.  (Decl. Blumenthal, ¶ 6(f).)

8       The Class consists of both the Wage and Hour Class and the FCRA Class.  The
9  Wage and Hour Class is defined as "all individuals who are or previously were employed
10  by Defendant Fast Auto Loans, Inc., in California and classified as non-exempt
11  employees at any time between January 26, 2014, and September 15, 2018 (the "Wage
12  and Hour Class Period")."  The FCRA Class is defined as "all employees or prospective
13  employees of Defendant in the United States regarding whom Defendant procured a
14  consumer report from January 26, 2016, through September 15, 2018 (the "FCRA Class
15  Period")."  (Agreement at ¶ I(B).)  (Decl. Blumenthal, ¶ 6(g).)

16       Class Counsel conducted a thorough investigation into the facts of the class action,
17  including a review of relevant documents and data and a diligent investigation of the
18  Class Members' claims against Defendant.  Class Counsel also retained an expert to
19  prepare a damage valuation in advance of mediation.  Based on the foregoing documents
20  and data, and their own independent investigation and evaluation, Class Counsel is of the
21  opinion that the settlement with Defendant for the consideration and on the terms set
22  forth in the Agreement is fair, reasonable, and adequate in light of all known facts and
23  circumstances, including the risk of significant delay, defenses asserted by Defendant,
24  and numerous potential appellate issues.  The Parties and their counsel recognize that,
25  in the absence of an approved settlement, they would face a protracted litigation course,
26  including a contested motion for certification, motions for summary judgment, and trial
27  and appellate proceedings that would consume time and resources and present each of
28  them with ongoing litigation risks and uncertainties.  (Decl. Blumenthal at ¶ 7(a).)

1   Settlement negotiations took place between experienced counsel and were

2   contentious and arm's length.  Plaintiffs and Class Counsel believe that this settlement

3   is fair, reasonable and adequate.  By reason of the settlement, Defendant agrees to pay

4   the Gross Settlement Amount of One Million One Hundred Thousand Dollars

5   ($1,100,000) as provided by the Agreement.  (Decl. Blumenthal at ¶ 7(b).)

6   After the settlement negotiations, the specific terms of the Agreement required

7   additional negotiation before the final written agreement could be signed.  Even after the

8   parties reached an agreement as to the basic terms, Class Counsel had to ensure that the

9   terms of the final settlement agreement were fair to every member of the Class and

10  retained the requisite opportunities for notice, exclusion, and objection in accordance

11  with class action law.  (Decl. Blumenthal  ¶ 7(c).)

12  By October 2018, the settlement was finalized and executed.  Class Counsel filed

13  the preliminary motion requesting Court approval of the settlement. [Doc. No. 35].  By

14  Order dated December 6, 2018, the Court requested certain revisions to the Class Notice.

15  Plaintiff filed a Supplemental Declaration with the revised Class Notice on January 14,

16  2019 [Doc. No. 37].  By the Order dated June 20, 2019, the Court granted preliminary

17  approval of the settlement and approved the mailing of the revised Class Notice.  [Doc.

18  No. 39].  Notice of the settlement providing Class members with notice and an

19  opportunity to claim monetary relief,  to opt out, or to object was then mailed by the

20  Settlement Administrator on July 19, 2019 to the 1,018 individuals who comprise the

21  Class.  (Decl. Blumenthal at ¶ 7(d).)

22  As detailed in the Declaration of the Settlement Administrator (Susanna Webb)

23  submitted herewith, out of the 1,018 individuals in the Class, only two Class Members

24  requested exclusion and there are no objections to the settlement.  As a result, nearly the

25  entire Class will be participating in the Settlement.  The average estimated Class Member

26  payment is $609 and the maximum Class Member payment is $2,315.   (Decl.

27  Blumenthal at ¶ 7(e).)

28

## III.   THE SETTLEMENT BEFORE THE COURT

To implement the terms of this Settlement, Defendant agrees to pay the Gross Settlement Amount of One Million One Hundred Thousand Dollars ($1,100,000) in full and complete satisfaction of the claims released by the Agreement.  (Agreement at ¶¶ III(A) and III(F).)  The Gross Settlement Amount will consist of: (i) all payments made to Participating Class Members; (ii) service awards  to the Class Representatives of not more than$10,000 each; (iii) $5,000 allocated for the release of the PAGA claims; (iv) up to $30,000 for the expenses of the Settlement Administrator; (v) Class Counsel's approved attorneys' fees of no more than $366,667; (vi) Class Counsel's Litigation Expenses in the amount approved by the Court, not to exceed $25,000; and (vii) the employer's share of payroll taxes on any portion of the Settlement payments allocated to wage payments. (Decl. Blumenthal at ¶ 3(a).)

As per Paragraph I(U) of the Agreement, the Net Settlement Amount is the Gross Settlement Amount less the Court-approved amounts for the Class Representative Service Payments, Class Counsel Fees Payment, Class Counsel Litigation Expenses Payment, the LWDA Payment, the Settlement Administration Costs, and the employer's share of payroll taxes.   The entire Net Settlement Amount will be distributed to Participating Class Members, which are those Class Members who do not request exclusion. (Agreement at ¶¶ I(U) and III(C).)   The Net Settlement Amount will be allocated to the FCRA Class and to the Wage and Hour Class.  The submission of a claim form is not required to be paid.  (Agreement at ¶ III(E)(3)(c).)  The Settlement Share for each Participating Class Member in the FCRA Class shall be $40.00 per FCRA Class Member. (Agreement at ¶ III(C)(2).)  The Settlement Share for each Participating Class Member in the Wage and Hour Class shall be calculated by (a) dividing the Wage and Hour Class Allocation by the total number of workweeks for all Participating Class Members in the Wage and Hour Class that occurred during the Wage and Hour Class Period, and (b) multiplying the result by each individual Participating Class Member's workweeks that occurred during the Wage and Hour Class Period.  (Agreement at ¶

1  III(C)(3).)  (Decl. Blumenthal, ¶ 3(b).)

2       Settlement checks shall remain valid for 180 days from the date of issue. If the

3  check of a Wage and Hour Class Member remains uncashed, the funds from such

4  uncashed checks for the Wage and Hour Class were initially to be paid to the DIR

5  Unpaid Wage Fund, however the DIR is no longer accepting funds.   Therefore, the

6  Parties will prepare an amendment to provide that the uncashed funds will be sent to the

7  Unclaimed Property Fund of the California Controller where it can be claimed by the

8  Participating Class Member.  If the check of a FCRA Class Member remains uncashed,

9  the funds from such uncashed checks for the FCRA Class will be paid to the Electronic

10  Privacy Information Center ("EPIC"), a non-profit organization involved privacy issues.

11  (Agreement at ¶ III(E)(12).)  (Decl. Blumenthal at ¶ 3(c).)

12       The release applicable to the Class relates to the allegations in the Action and

13  appears in the Agreement at Paragraph  III(F).  (Decl. Blumenthal at ¶ 3(d).)

14       KCC Class Action Services was appointed as Settlement Administrator.  All

15  administrative fees, costs and expenses incurred by the Settlement Administrator in

16  connection with administering the Settlement will be deducted from the Gross Settlement

17  Amount.  The Settlement Administrator has estimated that the administration expenses

18  are $30,751.39, but will be capped at $30,000. (Declaration of Webb at ¶ 9.)  (Decl.

19  Blumenthal, ¶ 3(e).)

20       Class Members were permitted the opportunity to object to or comment on the

21  Settlement; or elect not to participate in the Settlement.  Class Members who wished to

22  exclude themselves from the Settlement must have sent a written request for exclusion

23  to the Settlement Administrator not later than forty-five (45) days after the Settlement

24  Administrator mailed the Notice.  (Settlement Agreement at ¶ III(E)(3).)  Settlement

25  Class Members who wished to object to the Settlement must have sent their objection to

26  the Settlement Administrator within forty-five (45) days of the mailing of the Class

27  Notice.  (Settlement Agreement at ¶ III(E)(3).)  These periods were changed from 442

28  days to 45 days as ordered by the Court.  In response to the Notice, there were two opt-

1  outs submitted, and there were no objections submitted by Class Members. (Declaration

2  of Webb at ¶¶ 6-7.) (Decl. Blumenthal ¶ 3(f).)

3       By a separate motion [Doc. No. 40], Plaintiffs and their counsel seek, and

4  Defendant has agreed not to oppose, award to the Plaintiffs of a Class Representative

5  Service Payment in an amount of $10,000 each.  (Agreement at ¶ III(B)(1).)  The

6  Declarations of the Plaintiffs are submitted in support of this request.  In this motion,

7  Class Counsel also seeks an award of an amount not to exceed one-third of the Gross

8  Settlement Amount for reasonable attorneys' fees, and for reimbursement of litigation

9  costs not to exceed $25,000.  (Agreement at ¶ III(B)(2).) (Decl. Blumenthal ¶ 3(g).)

10      The Settlement in this case represents a substantial benefit for the Class.  In

11  advance of negotiations, Class Counsel received information regarding the number of

12  potential class members, payroll information, and other relevant issues, which permitted

13  Class Counsel to make an intelligent evaluation.  For the individuals whose claims are

14  at issue in this Action, Plaintiffs reviewed the data and used information provided by

15  Defendant to determine the potential damage valuation.  With the assistance of a damage

16  expert, DM&A, Plaintiffs calculated the alleged damages they believed they would

17  receive if they prevailed.  As detailed at preliminary approval, using the payroll and class

18  data, as to the Wage and Hour Class, Plaintiffs calculated that the resulting damages for

19  the miscalculation of overtime was $6,873, the off-the-clock wages were $828,262, the

20  meal period damages were calculated to be $604,293, the rest period damages were

21  $604,293 and the expense reimbursement claim for mileage was calculated to be

22  $710,700.  The settlement fund for the Wage and Hour Class of approximately

23  $1,072,800, before deductions, represents 36.3% of the calculated damages estimated by

24  the Plaintiffs, assuming these amounts could be proven in full at trial.  This settlement

25  amount is fair and reasonable given the defenses asserted by Defendant.    (Decl.

26  Blumenthal at ¶ 8(e).)

27      In *Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. 2007), the

28  federal district court for the Northern District of California approved a settlement of an

1  action claiming unpaid overtime wages where the settlement amount constituted
2  approximately 25% of the estimated actual loss to the class.  In *Stovall-Gusman v. W.W.*
3  *Granger, Inc.*, 2015 U.S. Dist. LEXIS 78671, at *12 (N.D. Cal. 2015), the District Court
4  granted final approval where "the proposed Total Settlement Amount represents
5  approximately 10% of what class might have been awarded had they succeeded at trial."
6  In *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 459 (9th Cir.
7  2000), the Court of Appeals affirmed the approval of a class settlement which
8  represented "roughly one-sixth of the potential recovery".  Here the settlement
9  consideration similarly constitutes a much higher percentage of the estimated unpaid
10  wages to the Class.  As a result, the Settlement provides the Class with a recovery that
11  compares favorably to what would have been sought at trial.  (Decl. Blumenthal at ¶
12  8(e).)

13  As to the FCRA Class, FCRA provides for statutory damages of $100 to $1,000
14  per willful violation.  15 U.S.C. § 1681n. A comparison of recently approved FCRA
15  settlements involving similar facts further confirms the reasonableness of this Settlement.
16  The Court in *Pietras v. Sentry Ins. Co.*, 513 F. Supp. 2d 983, 985 (N.D. Ill 2007), cited
17  "cited eighteen cases, which settled for an average of $34.59 per class member."
18  Similarly, in *Bailes v. Lineage Logistics, LLC*, 2016 U.S. Dist. LEXIS 110943 (D. Kan
19  2016), the District Court approved a FCRA class settlement which provided for a fund
20  of $149,205 for a class of 3,430, which correlates to $43.50 per person.  In *Feist v. Petco*
21  *Animal Supplies, Inc.*, 2018 U.S. Dist. LEXIS 98686 (S.D. Cal. 2018), Judge Marilyn
22  Huff recently granted preliminary approval to an FCRA class settlement of $1.2 million
23  for a class of 37,000, which equates to $32.43 per person.[2]  Here, the settlement amount

24  _____

25  [2] See also *Moore v. Aerotek, Inc.*, No. 2:15-cv-2701, 2017 WL 2838148, at *4 (S.D.
26  Ohio 2017) (per-capita gross recovery of $25 in case involving a stand-alone disclosure
   claim and a claim that employer did not provide a copy of consumer report); *Aceves v.*
27  *Autozone Inc.*, No. 5:14-cv-2032, ECF No. 58 (C.D. Cal. 2016) (approval of FCRA
   settlement with gross recovery of $20 per disclosure class member); *Patrick v. Interstate*
28  *Mgmt. Co., LLC*, No. 8:15-cv-1252, ECF No. 42 (M.D.Fla. 2016) (approval of FCRA

of $40 per person is fair and reasonable given the defenses asserted by Defendant. Because the alternative to this Settlement could likely be the Class receiving nothing, Class Counsel accepted the settlement as fair and reasonable. (Decl. Blumenthal at ¶ 8(e).)

The Settlement is fair, adequate and reasonable to the class and should be finally approved.  (Decl. Blumenthal ¶ 3(h).)  In sum, this settlement valued at $1,100,000 provides the Class Members with the opportunity to receive a substantial recovery.  This result is particularly remarkable in light of the fact that there was also a risk that, if the matter was not settled, Plaintiffs would be unable to prevail at trial on behalf of the entire class, and thereby not recover on behalf of any individuals other than themselves. At the time of the mediation, Defendant forcefully opposed the propriety of class certification, arguing that individual issues precluded class certification. While other cases have approved class certification in wage and hour claims, that is not the always the case. As such, class certification in this action would have been hotly contested.  Furthermore, liability in this case was far from certain in light of the defenses asserted by Defendant. (Decl. Blumenthal at ¶ 3(h).)

## IV.   THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT FINAL APPROVAL

When a proposed class-wide settlement is reached, it must be submitted to the court for approval. 2 H. Newberg & A. Conte, *Newberg on Class Actions* (3d ed. 1992) at §11.41, p.11-87.  Court approval of a class settlement is considered at a final settlement approval hearing, at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented and class members may be heard regarding the settlement. *See Manual for Complex Litigation, Second*

---

disclosure claim where class members received $9 each); *Landrum v. Acadian Ambulance Serv., Inc.*, No. 14-cv-1467, ECF No. 37 (S.D. Tex. 2015) (approval of FCRA disclosure settlement of $10 per person); *Walker v. McClane/Midwest, Inc.*, No. 2:14-cv-04315, ECF No. 29 (W.D. Mo. 2015) (approval of FCRA settlement in which disclosure class members recovered $24).

§30.44 (1993).  During final approval, the court must determine whether the settlement is fair, reasonable and adequate.  *See Officers for Justice v. Civil Service Com'n, etc.*, 688 F.2d. 615, 625 (9th  Cir. 1982) and  Fed. Rules Civ. Proc., rule 23(e).

Governing the settlement of class actions, the Federal Rules of Civil Procedure, §23 (e) specifically provides:

> The court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate.

F.R.C.P. § 23(e)(1)(c).

The decision to approve or reject a settlement is committed to the sound discretion of the trial judge because the trial judge is "exposed to the litigants, and their strategies, positions and proof." *Officers for Justice*, 688 F.2d at 626.

As set forth herein, this Settlement was reached through arm's-length negotiations. The Settlement was negotiated by experienced counsel for the Class and represented by adequate Class Representatives, who protected the interests of the Class Members. There were complex legal and factual issues that placed the ultimate outcome of this litigation in doubt.  Accordingly, the immediate value of the Settlement to the Class Members far outweighs the possibility of relief if this protracted and expensive litigation had continued through trial and appeal.  Finally, the considered judgment of all Parties to the Settlement is that the Settlement is fair and reasonable in light of the immediate benefit provided by the Settlement to the Class Members, which is a conclusion that is reinforced by the response of the Class Members participating in the Settlement.

Settlements of disputed claims are favored by the courts. *Waits v. Weller*, 653 F.2d 1288, 1291 (9th Cir 1981) ("settlement encouraged in appropriate class action settlements").   In evaluating settlements, the courts have long recognized that compromise is particularly appropriate since such litigation is difficult and notoriously uncertain.  Settlement is especially favored in class actions because it minimizes the litigation expenses of all parties and reduces the strain on judicial resources. *Officers for*

*Justice*, *supra*, 688 F.2d at 625 ("voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation"); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir.1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."); *In re Dept. Of Energy Stripper Well Exemption Litig.*, 653 F.Supp. 108, 115 (D.Kan.1986) ("It is in the interests of the courts and the parties that there should be an end to litigation and the law favors the peaceful settlement of controversies.")

"[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, *supra*, 688 F.2d at 625. Under this standard, the court must decide whether the proposed settlement falls within the range of reasonable settlements, taking into account that settlements are compromises between the parties reflecting subjective, unquantifiable judgments concerning the risks and possible outcomes of litigation. *Id.*

In cases such as this one, courts have repeatedly emphasized that there is a strong initial presumption that the compromise is fair and reasonable. *In re Heritage Bond Litig.*, 2005 U.S. Dist. Lexis 13555, at *11 (C.D. Cal. 2005). Courts are advised not to adjudicate the merits of the action, nor substitute their judgment for that of the parties who negotiated the settlement, nor should they reopen and enter into negotiations with the litigants in the hopes of improving the terms of the settlement. *Id.*, at *11; *Officers for Justice*, *supra*, 688 F.2d at 625.

The essential evaluation is whether, given the risks of litigation and the range of probable results, the settlement, taken as a whole, is fair, reasonable and adequate to all concerned. *Officers for Justice*, *supra* 688 F.2d at 625; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Here, the facts and circumstances compel the conclusion that the proposed settlement satisfies that standard.

1    **V.    THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE**

2        **A.    The Test for Fairness**

3        To determine whether a settlement is fair, reasonable, and adequate, courts

4    consider factors such as: "(1) the strength of the plaintiffs' case; (2) the risk, expense,

5    complexity, and likely duration of further litigation; (3) the risk of maintaining class

6    action status throughout the trial; (4) the amount offered in settlement; (5) the extent of

7    discovery completed and the stage of the proceedings; (6) the experience and views of

8    counsel; (7) the presence of a governmental participant; and (8) the reaction of the class

9    members to the proposed settlement." *Churchill v. Gen. Elec.*, 361 F.3d 566, 575 (9th

10   Cir. 2004); see also *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).

11       The list of factors is not exhaustive and should be tailored to each case. *Officers*

12   *for Justice*, at 625.  Due regard should be given to what is otherwise a private consensual

13   agreement between the parties. *Id.*  The inquiry "must be limited to the extent necessary

14   to reach a reasoned judgment that the agreement is not the product of fraud or

15   overreaching by, or collusion between, the negotiating parties, and that the settlement,

16   taken as a whole, is fair, reasonable and adequate to all concerned."  *Id,* at 625.

17   "Ultimately, the [trial] court's determination is nothing more than 'an amalgam of

18   delicate balancing, gross approximations and rough justice." *Id.*

19       The question whether a proposed settlement is fair, reasonable and adequate

20   necessarily requires a judgment and evaluation by the attorneys for the parties based

21   upon a comparison of "'the terms of the compromise with the likely rewards of

22   litigation.'" *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982), *cert. denied* 464

23   U.S. 818 (1983) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer*

24   *Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)).  Therefore, many courts

25   recognize that the opinion of experienced counsel supporting the settlement is entitled

26   to considerable weight. *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988);

27   *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983); *Weinberger*, 698 F.2d

28   at 74; *Armstrong v. Board of School Directors*, 616 F.2d 305, 325 (7th Cir. 1980); *Fisher*

*Bros. v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482, 489 (E.D. Pa. 1985).   For example, in *Lyons v. Marrud, Inc.*, 1972 U.S. Dist. LEXIS 13401, *5 (S.D.N.Y. 1972), the court noted that "[e]xperienced and competent counsel have assessed these problems and the probability of success on the merits.  They have concluded that compromise is well-advised and necessary.  The parties' decision regarding the respective merits of their position has an important bearing on this case."  *Id.* at *5.

**B.   The Settlement Satisfies the Test for Fairness**

    1.   <u>The Investigation and Discovery are Sufficient to Allow Class Counsel and the Court to Act Intelligently</u>

The stage of the proceedings at which this settlement was reached militates in favor of final approval of the settlement.   Class Counsel conducted a thorough investigation into the facts of the class action.   Class Counsel began investigating the Class Members' claims before this action was filed.   In advance of mediation, Defendant provided the information regarding the Class that was necessary for Class Counsel to intelligently negotiate a settlement.   Class Counsel engaged in an extensive review and analysis of the relevant documents and data with the assistance of an expert.   Accordingly, the agreement to settle did not occur until Class Counsel possessed sufficient information to make an informed judgment regarding the likelihood of success on the merits and the results that could be obtained through further litigation.   There was no need for continued litigation simply to reaffirm what was already known by the negotiating parties.  (Decl. Blumenthal at ¶ 8(d).)

Defendant opposed Plaintiffs' claims, and argued that Defendant complied fully with the California Labor Code and federal law.   The factual defenses asserted by Defendant presented serious risks to establishing liability.    Plaintiffs obtained information concerning the Class and Defendant's employment practices, as well as necessary data regarding the Class Members.   The parties then decided to initiate negotiations to determine whether the claims were amenable to an early resolution. (Decl. Blumenthal at ¶ 8(d).)

1   Class Counsel has litigated similar wage and hour and FCRA cases against other

2   employers.  (Decl. Blumenthal at ¶ 2.)  Although Plaintiffs and Class Counsel believed

3   that the case had merit, they recognized the potential risks, both sides would face if

4   litigation of this action continued.  As the federal court held in *Glass v. UBS Fin. Servs.*,

5   2007 U.S. Dist. LEXIS 8476 (N.D.Cal. 2007), where the parties faced uncertainties

6   similar to those in this litigation:

> In light of the above-referenced uncertainty in the law, the risk, expense,
> complexity, and likely duration of further litigation likewise favors the
> settlement. Regardless of how this Court might have ruled on the merits of
> the legal issues, the losing party likely  would have appealed, and the
> parties would have faced the expense and uncertainty of litigating an
> appeal. "The expense and possible duration of the litigation should be
> considered in evaluating the reasonableness of [a] settlement." See *In re
> Mego Financial Corp. Securities Litigation*, 213 F.3d 454, 458 (9th Cir.
> 2000). Here, the risk of further litigation is substantial.

12   *Id.* at *12.

13   Negotiations were both contentious and arm's-length.  Defendant vigorously

14   disputed liability and the amount of wages that were claimed to be owed.  Moreover,

15   Defendant argued that class certification could not be obtained.  Maintenance of the class

16   in this action was hotly disputed and would have been subject to a contested motion for

17   certification and even a subsequent motion for decertification.  (Decl. Blumenthal at ¶

18   7(b).)

19   Based on the complexity of the case, the novelty of the legal issues, the substantial

20   risks and uncertainty of the outcome on both liability and certification issues, as well as

21   the need to establish damages, Plaintiffs believe that the Settlement is fair, reasonable

22   and in the best interests of the Class Members.  There can be no doubt that counsel for

23   both parties possessed sufficient information to make an informed judgment regarding

24   the likelihood of success on the merits and the results that could be obtained through

25   further litigation, given the relative strengths and weaknesses of their positions.  (Decl.

26   Blumenthal at ¶ 7(f).)

27   2.   The Settlement Was Reached Through Arm's Length Bargaining

28   This settlement was the result of arm's-length negotiations between the parties

through their respective attorneys. Defendant disclosed confidential information relating to their organization, their employment practices, the size of the putative class, and payroll and other information for the Class Members. Class Counsel also examined the applicable law governing these claims and the alleged defenses. This information permitted Class Counsel to evaluate liability and settlement. After comprehensive legal and factual analysis, including the defenses asserted by Defendant, Class Counsel possessed sufficient information for intelligent evaluation of the case for purposes of settlement. (Decl. Blumenthal at ¶7(a).)

Prior to the initiation of settlement discussions, Class Counsel reviewed and outlined the case based upon the provided information, and determined the conditions of settlement which would be fair and reasonable to the Class. Class Counsel was experienced in the types of settlement appropriate to resolve these claims, as Class Counsel has previously litigated and settled other similar wage and hour and FCRA class actions. Initial informal discussions were productive and encouraged both parties to further analyze their positions and to pursue formal negotiations. (Decl. Blumenthal at ¶7(b).)

Following this investigation and discovery, the Parties agreed to discuss resolution through arms-length negotiations through a neutral mediator. On August 14, 2018, the parties mediated the Action privately with David Rotman, an experienced mediator of employment class actions. During the mediation, each side, represented by its respective counsel, engaged in arms-length negotiations with the assistance of the mediator. At the conclusion of the mediation, the parties could not agree to settle the Action. Only after these arms-length negotiations with the assistance of the mediator did the Parties agree to settle the Action and all other matters covered by this Agreement pursuant to the terms and conditions of a mediator's proposal and executed a Memorandum of Understanding. Most importantly, Plaintiffs and Class Counsel believe that this settlement is fair, reasonable and adequate. (Decl. Blumenthal at ¶7(b).)

After the agreement to settle, the specific terms of the settlement required

1  additional negotiation before the final written agreement could be signed.  Class Counsel

2  began the process of reviewing the settlement terms and drafting the Agreement and

3  exhibits.  Even after the parties reached an agreement, Class Counsel had to ensure that

4  the terms of the Settlement were fair to every member of the Class and contained the

5  requisite opportunities for notice, exclusion, and objection in accordance with federal

6  class action law.  Plaintiffs filed a motion for preliminary approval of the Settlement,

7  which the Court granted after additional information was provided and certain revisions

8  were made to the Class Notice.  [Doc. No. 39].  Notice of the settlement providing Class

9  Members with notice and an opportunity to claim monetary relief,  to opt out, or to object

10  was then mailed by the Settlement Administrator on July 19, 2019 to the individuals who

11  comprise the Class.  (Decl. Blumenthal at ¶ 7(d).)

12                3.    Counsel is Experienced in Similar Litigation

13         Class Counsel in this matter has extensive class action experience in many fields

14  and has represented thousands of persons nationwide in actions including labor and

15  overtime litigation, FCRA litigation, complex litigation, consumer class actions and

16  tobacco litigation.  Class Counsel has been previously approved as experienced Class

17  Counsel by state and federal courts throughout California, and Courts have found that

18  Class Counsel has substantial experience handling large employment related class

19  actions and has been found to be qualified class counsel in prior actions.  A list of

20  previous and current class action cases managed and settled by the Class Counsel in this

21  action is provided to the Court by way of the Declaration of Norman Blumenthal.  Class

22  Counsel have participated in every aspect of the settlement discussions and have

23  concluded the settlement is fair, adequate and reasonable and in the best interests of the

24  Class.    (Decl. Blumenthal at ¶ 2.)

25                4.    There Are No Objections to the Settlement and Few Opt-Outs

26         After dissemination of the class notice to the 1,018 members of the Class, which

27  provided each Class Member with the terms of the settlement, not a single Class Member

28  has objected to the settlement and only two Class Members requested exclusion from the

settlement. (Decl. Blumenthal at ¶4.) The absence of any objector strongly supports the fairness, reasonableness and adequacy of the Settlement. See *In re Austrian & German Bank Holocaust Litigation*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-119 (3d. Cir. 1990) (29 objections out of 281 member class 'strongly favors settlement'); *Laskey v. Int'l Union*, 638 F.2d 954 (6th Cir. 1981) (The fact that 7 out of 109 class members objected to the proposed settlement should be considered when determining fairness of settlement.)

Importantly, every Class Member was given the opportunity to participate in the Settlement under the same terms. Nearly the entire Class elected to participate in the Settlement and will be mailed a check for their Settlement Share. Here, given the fact that not one objection was made to the settlement, the Court should conclude that the settlement is fair, reasonable and adequate. (Decl. Blumenthal at ¶ 4.)

## 5. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

The complexities and duration of further litigation cannot be overstated. Here, a number of defenses asserted by Defendant presented serious threats to the claims of Plaintiffs and the other Class Members.

For example, Defendant contends that Defendant's employment practices complied with all applicable state and federal laws. Defendant also argued that the California Supreme Court decision in *Brinker v. Superior Court*, 53 Cal. 4th 1004 (2012), weakened Plaintiff's claims, on liability, value, and class certifiability. As to expense reimbursement, Defendant argued that it routinely reimbursed claimed use of personal vehicles for business purposes, and that any unreimbursed use of personal vehicles was negligible. As to the FCRA claim, Defendant argued that because the disclosure document consisted solely of the disclosure, it complied with FCRA in all respects, even though a separate document contained a release. *Coleman v. Kohl's Dep't*

1   *Stores, Inc.*, 2015 U.S. Dist. LEXIS 135746, *17 (N.D. Cal. 2015) (holding a release in

2   a separate document does not violate FCRA); *Luna v. Hansen & Adkins Auto Transp.,*

3   *Inc.*, 2018 U.S. Dist. LEXIS 100055, *18-*19 & n.6 (C.D. Cal. 2018).  Finally, the court

4   may find remitter/reduction of the statutory damages appropriate. See e.g. *Klingensmith*

5   *v. Max & Erma's Restaurants, Inc.*, 2007 U.S. Dist. LEXIS 81029, 2007 WL 3118505,

6   at *5 (E.D.Pa. 2007). If successful, Defendant's defenses could eliminate or substantially

7   reduce any recovery to the Class.  While Plaintiffs believe that these defenses could be

8   overcome, Defendant maintains these defenses have merit and therefore present a serious

9   risk to recovery.  (Decl. Blumenthal at ¶ 8(a).)

10      Moreover, there was also a significant risk that, if the Action was not settled,

11   Plaintiffs would be unable to obtain class certification and maintain a certified class

12   through trial, and thereby not recover on behalf of any employees other than themselves.

13   At the time of the mediation, Defendant forcefully opposed the propriety of class

14   certification, arguing that individual issues precluded class certification.  While other

15   cases have approved class certification in wage and hour claims, class certification in this

16   action would have been hotly disputed and was by no means a foregone conclusion.

17   (Decl. Blumenthal at ¶8(b).)

18      Both Plaintiffs and Class Counsel recognize the expense and length of a trial in

19   this action against Defendant through possible appeals which could take at least another

20   two to three years.  Class Counsel also have taken into account the uncertain outcome

21   and risk of litigation, especially in complex actions such as this Action.  Class Counsel

22   are also mindful of and recognize the inherent problems of proof under, and alleged

23   defenses to, the claims asserted in the Action.  Moreover, post trial motions and appeals

24   would have been inevitable.  Costs would have mounted and recovery would have been

25   delayed if not denied, thereby reducing the benefits of an ultimate victory. Plaintiffs and

26   Class Counsel believe that the settlement confers substantial benefits upon the Class

27   Members, and have determined that the settlement set forth in the Agreement is in the

28   best interest of the Class.  (Decl. Blumenthal at ¶8(c).)

1  **VI.   CONCLUSION**

2          For the reasons stated herein and in the accompanying declarations, Plaintiffs

3  respectfully submit that the proposed settlement is fair, reasonable and adequate to the

4  Class and to each Class Member, and should therefore be finally approved.

5
   Dated: September 16, 2019          BLUMENTHAL NORDREHAUG BHOWMIK
6                                     DE BLOUW LLP

7                                     By:_____*/s/Norman B. Blumenthal*_____
                                         Norman B. Blumenthal, Esq.
8                                        Attorneys for Plaintiff and the Class

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28